IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CRIMINAL ACTION** |
| v. | ) | |
| | ) | **No. 05-20025-01-KHV** |
| BRIAN LOCKETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On March 2, 2005, a grand jury returned an indictment which charged Brian Lockett, Wilbert Stevenson and Selena Johnson with knowingly and intentionally possessing with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II) and 18 U.S.C. § 2. It also charged Lockett with knowingly and intentionally possessing with intent to distribute five grams or more of cocaine base and further charged Stevenson with knowingly and intentionally distributing cocaine base.[1] See Indictment (Doc. #1). This matter is before the Court on Lockett's Motion To Suppress Evidence Seized Or Obtained As A Result Of The January 7, 2005 Detention Of Defendant Lockett And Of The Subsequent Search Of Mr. Lockett's Vehicle (Doc. #31) and Motion For

---

[1]      On June 22, 2005, a grand jury returned a superseding indictment which charged Lockett, Stevenson and Johnson with conspiracy to possess with intent to distribute 500 grams or more of cocaine and five grams or more of cocaine base within 1,000 feet of a public high school in violation of 21 U.S.C. §§ 846 and 860(a) (Count 1). It also charged all three defendants with knowingly and intentionally possessing with intent to distribute 500 grams or more of cocaine within 1,000 feet of a public high school in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii)(II) and 860(a), and 18 U.S.C. § 2 (Count 2). The superseding indictment also charged Stevenson with two counts of distribution of crack cocaine (Counts 3 and 4) and charged Lockett with one count of intimidating and threatening a witness (Count 5).

Separate Trial (Doc. #33), both filed May 5, 2005.  On June 6, 2005, the Court held an evidentiary hearing.  For reasons set forth below, the Court overrules both motions.

**Factual Background**

Based on the testimony and exhibits at the hearing, the Court finds the following facts:

In December of 2004 and January of 2005, Wilbert Stevenson sold marijuana to undercover officers.  Based on this information, officers obtained a warrant to search the apartment where Stevenson lived with Selena Johnson.  At approximately 9:45 p.m. on January 7, 2005, officers of the Special Enforcement Unit of the Kansas City, Kansas Police Department executed the warrant.

In that regard, officers knocked on the front door of the apartment.  Johnson refused to open the door, but the officers pried it open to gain entry.  Inside the apartment, they found Johnson (who was attempting to dispose of crack cocaine) with another woman and some young children.  Shortly thereafter, at approximately 10:12 p.m., Stevenson arrived at the apartment with Brian Lockett.  Stevenson attempted to open the door to enter the apartment and then knocked on the door.  Sergeant Moran stepped out of the apartment and detained Stevenson and Lockett, and immediately noticed a strong odor of marijuana on the two men.  The men identified themselves, and officers identified Stevenson as a resident of the apartment.  They detained Lockett to determine what role, if any, he had played in the criminal enterprise. Lockett had a large bulge in his right front pocket, and Sergeant Moran patted him down for officer safety. In doing so, Sergeant Moran uncovered keys – including a key to a Chevrolet.

Detective Darren Koberlein also spoke with Lockett and Stevenson.  Based on this conversation, Detective Koberlein believed that Lockett had an outstanding drug tax warrant.  While Detective Koberlein was questioning Lockett and Stevenson, Sergeant Moran went to the parking lot to determine the vehicle

in which Lockett and Stevenson had arrived. Sergeant Moran noticed a 1999 Chevrolet Silverado which had not been there when the officers arrived. Sergeant Moran noticed a strong odor of marijuana near the cab of the truck. He ran the license plate and determined that the truck belonged to Brenda Lockett. Sergeant Moran then returned to the apartment and told Detective Koberlein about the marijuana odor near the cab of Lockett's truck. Lockett and Stevenson overheard Detective Koberlein's comment. Stevenson immediately volunteered that he had just smoked marijuana in the vehicle and indicated that marijuana remained inside the vehicle. Lockett, however, refused to consent to a search of the vehicle.

Officers eventually determined that Lockett had no outstanding drug tax warrants. A few minutes later, officers arrested Stevenson and released Lockett. Lockett was released immediately after he refused to consent to a search of his vehicle. In all, officers detained him approximately 25 minutes.

Officers towed Lockett's vehicle pending a warrant to search it. The following day, officers obtained a warrant which they executed on January 10, 2005. The warrant was dated August 8, 2005, and the affidavit in support of the warrant included an erroneous statement that officers had seen Lockett and Stevenson arrive in the Chevrolet Silverado. In the truck, officers found $7,440.00 in currency, marijuana and papers.

On May 5, 2005, Lockett filed a motion to suppress the evidence obtained from the truck. He alleges that officers detained him for an unreasonable time, that the search of his vehicle was the product of that unreasonable detention and that the search warrant for the vehicle was not supported by probable cause. Lockett also seeks a separate trial.

<u>**Analysis**</u>

**I.      Motion To Suppress**

      **A.      The Detention**

Lockett argues that the length of his detention was excessive, in that once officers had determined

his identity and learned that he had no weapons or outstanding warrants, they should have released him.

<u>See</u> <u>United States v. Maddox</u>, 388 F.3d 1356 (10th Cir. 2004).  Defendant argues that the evidence

obtained from his vehicle was the fruit of his unlawful detention and should be suppressed.

The Tenth Circuit has defined three categories of police/citizen encounters: (1) voluntary

cooperation in response to non-coercive questioning; (2) investigatory or <u>Terry</u>-type stops; and (3) arrest.

<u>United States v. Muldrow</u>, 19 F.3d 1332, 1335 (10th Cir.) (citing <u>United States v. Cooper</u>, 733 F.2d

1360, 1363 (10th Cir.), <u>cert. denied</u>, 467 U.S. 1255 (1984)), <u>cert. denied</u>, 513 U.S. 862 (1994).  This

case involves the second category: an investigatory or <u>Terry</u> stop.  Lockett does not challenge the initial

detention and pat down search, and the Court finds that they were justified for officer safety.  <u>See</u> <u>United</u>

<u>States v. Garcia</u>, 861 F. Supp. 996, 1001 (D. Kan. 1994) (officers stopped and patted down man who

approached residence that was about to be searched for drug trafficking; officers acted reasonably due to

unique circumstances of stop).  The detention, however, soon became investigative in nature.  Sergeant

Moran testified he had "detained [Lockett] to find out what his role was in [the] investigation."  Thus,

Lockett's detention must be evaluated as an investigatory detention.

In deciding whether an investigatory detention is permissible, the Court must determine both

"whether the officer's action was justified at its inception, and whether it was reasonably related in scope

to the circumstances which justified the interference in the first place."  <u>Terry v. Ohio</u>, 392 U.S. 1, 20

(1968).  Law enforcement officers may stop and briefly detain a person for investigative reasons if the

officer has a reasonable suspicion that criminal activity may be afoot.  United States v. Sokolow, 490 U.S.

1, 7 (1989).  After an officer resolves the concern that justified the initial stop,

any further detention must be supported by a reasonable suspicion of criminal activity.  See United States

v. Alarcon-Gonzalez, 73 F.3d 289, 292-93 (10th Cir. 1996).  Thus, "reasonable suspicion must exist at

all stages of the detention, although it need not be based on the same facts throughout."  United States v.

Soto-Cervantes, 138 F.3d 1319, 1322 (10th Cir.), cert. denied, 525 U.S. 853 (1998).  There must be

"specific and articulable facts" to support a finding of reasonable suspicion; an "inchoate and

unparticularized suspicion or 'hunch'" is inadequate.  Terry, 392 U.S. at 21.  Moreover, "whether . . . an

investigative detention is supported by an objectively reasonable suspicion of illegal activity does not

depend on any one factor but on the totality of the circumstances."  United States v. Soto, 988 F.2d 1548,

1555 (10th Cir. 1993).

Immediately upon detaining Lockett and Stevenson, Sergeant Moran noticed their strong smell of

burnt marijuana.  The distinct odor of marijuana alone can establish probable cause to search a bag or

vehicle.  United States v. Morin, 949 F.2d 297, 300 (10th Cir. 1991).  Because marijuana odor is sufficient

to permit a search of vehicle, it also constitutes reasonable suspicion to detain an individual for questioning.

See United States v. Ozbrin, 189 F.3d 1194, 1200 (10th Cir. 1999) (smell of marijuana taken alone

affords reasonable suspicion to further detain suspect for questioning).  In addition, Lockett had come to

the apartment with Stevenson, who had previously sold marijuana to undercover officers and had cocaine

in his apartment.  Officers can reasonably suspect that individuals with a strong scent of burnt marijuana

and who visit an apartment containing drugs are involved in illegal drug activity.  See Illinois v. Wardlow.

- 5 -

528 U.S. 119, 125 (2000) (even though conduct justifying stop was ambiguous and susceptible of innocent

explanation, officers may detain individuals to resolve ambiguity); cf. United States v. Reid, 997 F.2d 1576,

1579 (D.C. Cir. 1993) (greater likelihood that person in small private residence containing drugs will be

involved in drug activity occurring there than individual who happens to be in tavern where bartender is

suspected of possessing drugs), cert. denied, 510 U.S. 1132 (1994); United States v. Harvey, 897 F.2d

1300, 1304 (5th Cir. 1990) (driving up next to drug house during search established reasonable suspicion),

overruled in part on other grounds, United States v. Lambert, 984 F.2d 658 (5th Cir. 1993).  In this case,

officers met Lockett at the residence of a known drug dealer (in the company of that same drug dealer) and

found a strong smell of marijuana on both men.  Based on the totality of the circumstances, the officers had

an objectively reasonable suspicion that Lockett was involved in criminal activity and they were justified

in detaining him for questioning.

Lockett argues that after officers determined that he had no weapons or outstanding warrants, they

should have released him.  Lockett does not state when during the course of his detention officers finally

determined that he had no outstanding drug tax warrants.  From the evidence presented at the suppression

hearing, the Court finds that officers released Lockett within a few minutes after they determined this fact.

Any delay in releasing Lockett after officers determined that he had no warrants was reasonable.[2]  In

addition, the total length of Lockett's detention (some 25 minutes) was reasonable under the circumstances.

---

[2]     Officers apparently learned that Lockett had no outstanding warrants at about the same time that Sergeant Moran returned from the parking lot.  To the extent Detective Koberlein learned that Lockett had no outstanding drug tax warrants while Sergeant Moran was in the parking lot, the length of Lockett's detention nevertheless was reasonable under the circumstances.  As soon as Sergeant Moran returned and Lockett refused to a search of his vehicle, officers released him.

Furthermore, the search warrant for the vehicle was not a product of anything which happened in the period during which officers detained Lockett after they learned that he had no warrants.  In the period after officers learned that Lockett had no outstanding warrants, they asked no questions about potential drug trafficking or usage.[3]  Moreover, the affidavit in support of the search warrant for Lockett's vehicle reflects that officers relied almost exclusively on Stevenson's statement that he had smoked marijuana earlier and that some marijuana was still in the truck.  See Affidavit In Support Of A Search Warrant, Exhibit 2 to Response To Defendant's Motion To Suppress Evidence (Doc #34) filed May 16, 2005. Even if the officers detained Lockett longer than absolutely necessary, they did not learn any information from Lockett during that extended period which was necessary to obtain a search warrant for the vehicle. Lockett has not shown that if officers had released him a few minutes earlier, he could have stopped the officers from towing the vehicle while they applied for a search warrant.  Similarly, he has not shown that officers would not have secured a search warrant.  For the reasons stated above, Lockett's detention was not excessive and the evidence obtained from his vehicle was not the fruit of an unlawful detention.

**B.     The Warrant**

In his initial motion, Lockett claimed that the search of his vehicle was without a warrant and was unsupported by probable cause.  At the hearing on defendant's motion, the government presented the affidavit and the search warrant which officers obtained on January 8, 2005.  Defendant now contends that (1) the affidavit in support of the warrant is defective because it includes a false statement that officers saw

---

[3]     Even if officers learned that Lockett had no outstanding warrants before Sergeant Moran returned from the parking lot, officers asked Lockett for consent to search his vehicle after Stevenson confessed to smoking marijuana in the vehicle.  As soon as Lockett refused consent, officers released him.

Stevenson and Lockett arrive at the residence in the 1999 Chevrolet Silverado; and (2) the warrant is defective because it includes an incorrect date.

Where an affiant deliberately or recklessly makes a false statement in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause. United States v. Basham, 268 F.3d 1199, 1204 (10th Cir. 2001), cert. denied, 535 U.S. 945 (2002); see United States v. Leon, 468 U.S. 897, 923 (1984); Franks v. Delaware, 438 U.S. 154, 171-72 (1978). A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for the truth, does not invalidate a warrant. United States v. Colonna, 360 F.3d 1169, 1174 (10th Cir.), cert. denied, 125 S. Ct. 37 (2004). Defendant bears the burden to demonstrate by a preponderance of the evidence the statement's falsity or reckless disregard for the truth. United States v. Tisdale, 248 F.3d 964, 973 (10th Cir. 2001), cert. denied, 534 U.S. 1153 (2002).

The statement that officers saw Stevenson and Lockett arrive at the apartment in the Chevrolet Silverado was not material to the magistrate's finding of probable cause. The odor of marijuana around the vehicle and on Lockett and Stevenson, and Lockett's arrival with Stevenson (a known drug dealer) at Stevenson's apartment, taken together, establish probable cause for the search warrant – independent of the statement in question. See Morin, 949 F.2d at 300 (smell of marijuana can establish probable cause); see also Reid, 997 F.2d at 1576 (officers reasonably suspected individual at residence where drugs were found). Defendant has not shown that the magistrate relied on the statement that officers saw Stevenson and Lockett arrive at the apartment in the Chevrolet Silverado. Therefore the Court must overrule defendant's motion to suppress.

Even if the misstatement was critical to establishing probable cause, the Court finds that the false

- 8 -

statement was unintentional and not in reckless disregard of the truth.  Detective Koberlein testified that he thought another officer had seen Stevenson and Lockett arrive in the vehicle.  See United States v. Monaco, 700 F.2d 577, 580 (10th Cir. 1983) (search warrant can be predicated upon affidavit containing direct observations of officers or hearsay from reliable source).  Defendant offers no evidence that Detective Koberlein did not believe his statement was true or that the information from another officer was suspect.  Defendant therefore has not met his burden to show that the affiant deliberately or recklessly made a false statement.

Defendant also argues that the warrant is defective on its face because it contains the wrong date. The date on the warrant (August 8, 2005) is obviously a typographical or technical error because the warrant issued on January 8, 2005.  Such an error does not affect the probable cause inquiry or require suppression of evidence found in execution of the warrant.  See United States v. Lora-Solano, 330 F.3d 1288, 1293 (10th Cir. 2003) (clerical error regarding house number of residence to be searched did not invalidate warrant); United States v. Walker, No. 03-40048-01-RDR, 2003 WL 22077683, at *1 (D. Kan. Aug. 12, 2003) (typographical mistakes on affidavit not grounds for suppression).  For these reasons, defendant's motion to suppress is overruled.

## II.    Motion For Separate Trial

Rule 8(b), Fed. R. Crim. P., permits joinder of two or more defendants in the same indictment if it alleges that "they . . . participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."  Defendants do not claim that joinder was improper under this standard, and the allegations in the indictment indicate that the counts involving these defendants were related to, and were part of, a larger series of acts or transactions set forth in other counts.  See Motion

For Separate Trial (Doc. #33), filed May 5, 2005.  Lockett, Stevenson and Johnson were therefore properly joined in the same indictment.

The federal system maintains "a preference . . . for joint trials of defendants who are indicted together."  Zafiro v. United States, 506 U.S. 534, 537 (1993).  Joint trials promote judicial economy and "serve the interest of justice by avoiding the scandal and inequity of inconsistent trials."  Richardson v. Marsh, 481 U.S. 200, 209 (1987).  Rules 8(b) and 14 are designed "to promote economy and efficiency and to avoid a multiplicity of trials, [so long as] these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial."  Bruton v. United States, 391 U.S. 123, 131, n.6 (1968).  Under Rule 14, the Court may grant a severance when it appears that joinder will result in prejudice to a defendant. A district court should only grant a severance, however, "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Zafiro, 506 U.S. at 539.

Lockett argues that a joint trial will prejudice his rights if the government presents inculpatory statements by non-testifying co-defendants, thereby violating his right to confront the witnesses against him.  See United States v. Hill, 901 F.2d 880, 883 (10th Cir. 1990).  In particular, Lockett objects to statements by Johnson that Lockett owned and/or delivered the cocaine which officers found in the apartment.

The government suggests that Johnson's statements can be redacted to avoid any confrontation problems.[4]  Defendant has not shown any potential prejudice under the government's suggested procedure

---

[4]      A defendant's name can be replaced with a neutral pronoun or phrase as long as "the incrimination of the defendant is only by reference to evidence other than the redacted statement and a limiting instruction is given to the jury."  United States v. Verduzco-Martinez, 186 F.3d 1208, 1214 (10th (continued...)

or demonstrated why instructions would be inadequate to ensure that the jury separately considers the evidence pertaining to each defendant.  See Zafiro, 506 U.S. at 539-41 (less drastic measures, such as limiting instructions, often suffice to cure risk of prejudice); United States v. Hollis, 971 F.2d 1441, 1456 (10th Cir. 1992) (defendant bears heavy burden of demonstrating prejudice), cert. denied, 507 U.S. 985 (1993).[5]  In sum, the Court finds that Lockett has not met his burden of demonstrating prejudice as a result of a joint trial.  Accordingly, the Court overrules his motion for a separate trial.

  **IT IS THEREFORE ORDERED** that defendant's Motion To Suppress Evidence Seized Or Obtained As A Result Of The January 7, 2005 Detention Of Defendant Lockett And Of The Subsequent Search Of Mr. Lockett's Vehicle (Doc. #31) filed May 5, 2005, be and hereby is **OVERRULED**.

  **IT IS FURTHER ORDERED** that defendant's Motion For Separate Trial (Doc. #33) filed May 5, 2005 be and hereby is **OVERRULED**.

  Dated this 1st day of July, 2005, at Kansas City, Kansas.

       s/ Kathryn H. Vratil
       KATHRYN H. VRATIL
       United States District Judge

---

[4](...continued)
Cir. 1999).

[5]  The Court also notes that Johnson has pled guilty to Count 1 of the indictment.